UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID PRUETER,

        Plaintiff,

v.

AGEE REALTY CORPORATION,

        Defendant.

                                          /

CASE NO. 10-14404

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are cross motions for summary judgment: Defendants' Motion for Summary Judgment (Doc. No. 7), and Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 13). Defendant Agree Realty Corporation (Agree) and its former employee, Plaintiff David Prueter dispute whether Plaintiff's stock bonuses were subject to immediate vesting after his employment ended. The Court heard oral argument on March 3, 2011 and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, Defendant's motion is **GRANTED** and Plaintiff's motion is **DENIED.**

**I. FACTS**

Agree is a commercial real estate company specializing in the development, acquisition, and management of retail properties. Prueter worked for Agree from January 2000 until his termination in March 2010. During his first five years of employment with Agree, he worked under the January 2000 Employment Agreement and 2000 Addendum. (Doc. No. 13, Exs. 1, 2.) On January 10, 2005, Plaintiff entered into a second employment agreement, and executed the 2005 Addendum. (Doc. No. 13, Exs, 3, 4.)

The 2005 Agreement covered Prueter's employment as Vice President of the company and "end[ed] on the first anniversary of the Effective Date (the "initial Term"). (Doc. No 13, Ex. 3, p. 2.) The Agreement covered compensation, duties, benefits, termination, and noncompetition.

Paragraph 11, reads, in relevant part:

> <u>Complete Understanding; Amendment; Waiver</u>. This Employment Agreement constitutes the complete understanding between the parties with respect to the employment of the Executive hereunder, and no statement, representation, warranty or covenant has been made by either party with respect thereto except as expressly set forth herein. This Employment Agreement shall not be altered, modified, amended or terminated except by written instrument signed by each of the parties hereto.

Id.

The Addendum to Employment Agreement dated January 10, 2005, (Doc No. 13, Ex. 4), was executed the same day. It specifies David Prueter's compensation in addition to that referenced in the Employment Agreement. Paragraph 4 reads,

> At the <u>expiration</u> of the Employment Agreement, the Company shall have the right to either 1) have all Restricted Shares immediately vest and the restrictions shall lapse entirely or 2) purchase those Restricted Shares which have not vested from the executive at the fair market value of said shares. The fair market value shall be based on the average stock price of the thirty (30) days preceding the expiration of the Employment Agreement.

Id. (emphasis added).

Between January 2006 and January 2010, Plaintiff and Agree entered into fourteen separate Restricted Stock Agreements, and Plaintiff received rights to 29,250 shares of restricted, unvested stock. (Doc. No. 7, Ex. 5.) When Plaintiff's employment ended in March 2010, Agee and Prueter disagreed as to whether 19,450 shares valued at $482,165.50, and dividends in the amount of $19,839.00 vested immediately.

2

On October 13, 2010, Plaintiff requested his vested stock in writing from the Board of Directors. (Doc. No. 13, Ex. 7.) The Board refused, and on November 3, 2010, Plaintiff filed suit against Defendant for breach of contract and/or unjust enrichment.

The last Restricted Stock Agreement, which the parties signed in January 2010, reads:

> Termination. Except as determined by the Compensation Committee of the Company's Board of Directors (The Committee") at any time, upon the failure of the Grantee to be employed by the Company or any of its affiliates for any reason, **all unvested restricted shares shall be forfeited** by the Grantee to the Company without the payment of any consideration by the Company. Upon forfeiture, the Company shall cancel, or cause the transfer agent to cancel, the stock certificate or book-entry relating to the unvested restricted shares. Notwithstanding the foregoing, all unvested restricted shares shall vest immediately upon the occurrence of Grantee's death.

(Doc. No. 16, Ex. E, ¶ 3.) (Emphasis added.)

## II. STANDARD OF REVIEW

Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the nonmovant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

The pivotal dispute is whether the 2005 Employment Agreement and 2005 Addendum or the 2010 Restricted Stock Agreement governs distribution of the stock at the time of Prueter's termination. It is undisputed that the 2005 Employment Agreement had a specified end date of January 10, 2006, four years before Prueter's employment ended. Agree asserts that it did not renew the Employment Agreement, which is unambiguous, and it must be enforced as written. Further, because there was no written agreement, Plaintiff's claim is governed by the Restricted Stock Agreement. In contrast, Preuter insists that the parties intended that the 2005 Employment agreement and Addendum continued to govern his employment with Agree.

There is no dispute that when Prueter began his employment at Agree in 2000, he insisted that a provision be added to the 2000 Addendum that any unvested stock would vest immediately in the event his employment with Defendant ended. Prueter did so because Agree had no formal retirement contribution plan. (Doc. No. 13, Ex. 4, Decl. of Plaintiff, ¶ 8.) That provision also was included in the 2005 Addendum. Specifically, Paragraph 5 provides that in the event of Prueter's termination for any reason other than cause, "all restricted shares. . .shall immediately vest and the restrictions shall lapse." (Doc. No. 13, Ex. 4.)

This Court finds the unpublished decision in Switzer v. Hayes Wheels Int'l, Inc., No. 98-2361, 2000 WL 92273 (6th Cir. Jan. 21, 2000), persuasive. The fact are analogous, and the analysis is directly on point. In Switzer, the parties entered into an initial three-year written agreement and executed two subsequent written amendments extending the initial agreement. After the extended agreement expired, the plaintiff continued to work without

4

a contract until he was terminated. As is the case here, the plaintiff claimed benefits pursuant to the parties' written agreement whereas the defendant argued that the expiration of the agreement terminated the plaintiff's contractual rights. The Sixth Circuit held that under Michigan law, the plaintiff was not entitled to recover benefits under an implied contract theory. The Court articulated the state law on renewal of contracts by implication as follows:

> Where the contract language is clear and unambiguous, interpretation is a question of law. See Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist., 550 N.W.2d 228, 237 (Mich. 1996) (citing Dykema v. Muskegon Piston Ring Co., 82 N.W.2d 467, 472 (Mich. 1957)). Courts interpret contract language in accordance with its plain meaning. See Orley Enter., Inc. v. Tri-Pointe, Inc., 522 N.W.2d 896, 898 (Mich. Ct. App.1994). If ascertainable, a court's primary responsibility is to "effectuate the intent of the parties." Terry Barr Sales [Agency, Inc. v. All-Lock Co.], 96 F.3d 174, 179 (6th Cir. 1996)(quoting Ford Motor Co. v. Northbrook Ins. Co., 838 F.2d 829, 832 (6th Cir.1988)). If the provisions of the contract are ambiguous, "the parties' practical interpretation of their contract, and their course of conduct under that contract, are entitled to great weight. . . ." Terry Barr Sales, 96 F.3d at 180.

Here, Plaintiff bears the burden of proving not only the existence of a contract, but also his entitlement to benefits pursuant to that contract. Switzer, 2000 WL 92273 at *3 (citing Lambert v. Jim Causley Pontiac, Inc., 209 N.W.2d 619, 619-20 (Mich. Ct. App.1973) (citing People v. Swineford, 43 N.W. 929 (Mich. 1889)). Although a contract may be implicitly renewed under Michigan law, a contract does not continue and is not implicitly renewed where contrary intentions are expressed. Switzer, at *3 (citing Howell Elec. Light & Power Co. v. Village of Howell, 92 N.W. 940, 941 (Mich. 1903).

Here, the Court concludes that the 2005 Agreement and Addendum did not implicitly renew. Despite Plaintiff's argument to the contrary, the parties did not intend such a result. Simply put, the 2005 Agreement is clear that it expired on the "first anniversary of the

5

Effective Date." (Doc. No. 13, Ex. 3, p. 2.)  Moreover, the Agreement is unambiguous: all modifications to the Agreement had to be made in writing. (Id., ¶ 11).  Further, the parties' past practice supports such a finding.  When the 2000 Agreement, which also included a specific expiration date and required modifications in writing, expired, the parties executed a new agreement.

Accordingly, even though Prueter continued working after the expiration of the specified period of employment designated in the Employment Agreement, his contract was not continued.  See Howell Elec. Light & Power Co. v. Village of Howell, 132 Mich. 117, 120, 92 N.W. 940, 941 (1903) (stating that continued performance may imply an intent to renew, but "[i]f there be anything to show a contrary intention, the renewal of the contract for the stated period will not be inferred"). Under the facts of this case, no reasonable factfinder could decide that a permissible inference arises from Prueter's conduct after expiration.  Here, the contrary evidence, in large measure, is Plaintiff's own assertion that the contract continued.  His assertion fails in light of the explicit language of the 2005 Agreement.  This conclusion is not called into question by Prueter's argument   that other individuals who left Defendant's employ received their unvested stock.  First, Agree denies this assertion.  Further, Prueter has not provided the employment agreements of these individuals.  Finally, according to Agree it did cancel shares of unvested stock rights held by two other former employees, but then executed consulting agreements with them allowing the stock rights to continue to vest over time.  This facts are not relevant to Plaintiff's situation.

In sum, Plaintiff's 2005 Employment Agreement was for a  fixed term, and required modification in writing.  None occurred.  Defendant was not required to notify Plaintiff that

their agreement expired–it was stated clearly and unambiguously in their agreement.

In the alternative, Plaintiff advances a claim of unjust enrichment. This claim fails as a matter of law, because the claim can proceed only in the absence of an express contract. Belle Isle Grill Corp. v. Detroit, 256 Mich. App 463, 478; 666 N.W.2d 271 (2003). Here, the restricted stock agreement signed in January 2010 governs the dispute. It requires all unvested restricted shares to be forfeited.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

**IT IS SO ORDERED.**

                                                s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                UNITED STATES DISTRICT JUDGE

Date: April 8, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                                s/Bernadette M. Thebolt
                                                Deputy Clerk